UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIE S.<br><br>                              Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI, Commissioner of<br>Social Security,<br><br>                              Defendant. | Case No.:  20-cv-2196-MMA-BGS<br><br>**REPORT AND<br>RECOMMENDATION TO REMAND**<br><br>[ECF 24] |

## I.    INTRODUCTION

Plaintiff Marie S. ("Plaintiff" or "claimant") filed a Complaint seeking judicial review of the Commissioner of the Social Security Administration's ("Commissioner" or "Defendant") denial of disability insurance benefits under the Social Security Act, (ECF 1), and the Commissioner has filed the Administrative Record (ECF 18).[1] Pursuant to the

---

[1] There were delays in Plaintiff completing proper service of the Complaint followed by delays in Defendant's preparation of the Administrative Record, and an extension of the briefing schedule. (ECF 8-12 (OSC, response, proper service, and order on OSC); ECF 14-17 (Order to file status, status report, request for extension of time to file Administrative Record, and filing of Administrative Record); ECF 22-23 (joint motion for extension and Order granting).)

Court's Order, the parties have filed a Joint Motion for Judicial Review addressing both parties' positions. (ECF 20 (Court's briefing Order); ECF 24 (Joint Motion).)

Plaintiff seeks reversal of the final decision denying benefits and an order for the payment of benefits or, in the alternative that the Court remand the case for further administrative proceedings. Plaintiff argues the Administrative Law Judge ("ALJ") erred in his evaluation of Dr. Andrews' opinion. (ECF 24 at 4-10, 16.[2]) The Commissioner argues that the ALJ properly considered the physician opinion. (ECF 24 at 11-16.)

The Honorable Michael M. Anello has referred this matter to the undersigned on a report and recommendation basis. After careful consideration of the parties' arguments, the Administrative Record and the applicable law and for the reasons discussed below, the Court **RECOMMENDS** the case be **REMANDED** to the Agency.

## II.   PROCEDURAL HISTORY

Plaintiff applied for disability insurance benefits on August 16, 2018. (AR 162-68.[3]) At Plaintiff's request, a hearing was held before an ALJ on March 5, 2020. (AR 36-70 (hearing transcript), 110-111 (request for hearing).) The ALJ issued an unfavorable decision on March 30, 2020. (AR 13-28.) Plaintiff's request for Appeals Council review was denied on September 30, 2020. (AR 1-7 (denial).)

## III.   ALJ DECISION

The decision explains the five-step evaluation process for determining whether an individual is eligible for disability benefits and then proceeds through steps one through four of the evaluation process. (AR 16-28.) Because the ALJ found Plaintiff could perform her past relevant work, the ALJ did not reach step five. (AR 27.)

---

[2] Unless otherwise noted, the Court cites the CM/ECF electronic pagination for the parties' briefing and the Administrative Record pagination for cites to it.

[3] The parties' joint brief indicates her application was filed on July 25, 2018 (ECF 24 at 2), however the pages cited in the brief indicate her application was completed on August 15, 2018. (AR 162-68.)

### A.   Step Two

After finding Plaintiff had not engaged in substantial gainful activity at step one, (AR 18), the ALJ addresses step two. (AR 18-19.) At step two, the ALJ determines whether a claimant has a "severe medically determinable physical or mental impairment … or combination of impairments that is severe." 20 C.F.R. § 404.1520(a)(4)(ii); § 404.1520(c). The decision finds Plaintiff had the following medically determinable severe impairments: "degenerative disc disease of the lumbar spine with facet arthropathy; a cervical spine disorder; scoliosis and a history of breast cancer, status-post mastectomy and reconstruction with multiple surgeries." (AR 18.)

The ALJ then notes Plaintiff "has also alleged disability due to a post-traumatic stress disorder" and acknowledges the opinions of a psychiatrist, Dr. Woods, and a therapist that Plaintiff suffered from post-traumatic stress disorder. (AR 19.) The ALJ then explains why he has rejected these providers' opinions that Plaintiff was incapable of performing the duties of her profession. (AR 19.) The ALJ finds Plaintiff's mental impairments do not meet the 12.15 listing criteria based on consideration of the "paragraph B" criteria. (AR 19-20.) The ALJ explains the "paragraph B" criteria are only met when mental impairments cause one extreme or two marked limitations in one of four functional areas. (AR 19.) The ALJ then discusses why he found Plaintiff had only mild limitations in the four functional areas: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) mild limitation in adapting or managing herself. (AR 20.) In conducting this analysis, the ALJ discussed Dr. Woods mental status examination. (AR 20.)

The decision then indicates that this "paragraph B criteria" analysis is only used to rate the severity of mental impairments for steps two and three and not a residual functional capacity ("RFC"). (AR 20.) The ALJ concludes that Plaintiff's post-traumatic stress disorder is not a severe impairment. (AR 21.)

**B.      Step Three**

At step three, the ALJ considers whether the claimant's impairments meet or equal one or more of the specific impairments or combination of impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1, the listings. *See* §§ 404.1520(a)(4)(iii), 404.1520(d), 404.1525, 404.1526. The ALJ found Plaintiff did not meet a listing at step three. (AR 21.)

**C.      Residual Functional Capacity**

If the claimant does not meet a listing, the ALJ "assess[es] and makes a finding about [the claimant's] residual functional capacity based on all the relevant medical and other evidence in [the claimant's] case record." 20 C.F.R. §§ 404.1520(e). A claimant's RFC is the "most [they] can still do despite [their] limitations" taking into account all medically determinable impairments, including "medically determinable impairments that are not 'severe.'" 20 C.F.R. § 404.1545(a)(1)(2). The RFC is used at the fourth and fifth steps to determine whether the claimant can do their past work (step four) or adjust to other available work (step five). §§ 404.1520(e)-(f), 404.1545(a)(5). The ALJ assessed the following RFC:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b). However, she could never climb ladders, ropes or scaffolds; occasionally climb ramps and stairs; and occasionally balance, stoop, kneel, crouch and crawl. Additionally, she could perform no bilateral overhead reaching and no work around unprotected heights. Lastly, she would need to avoid concentrated exposure to temperature extremes; humidity; vibrations; pulmonary irritants, such as fumes, odors, dust, gases, poor ventilation, etc.; and workplace hazards, such as unprotected heights, dangerous or fast-moving machinery, etc.

(AR 21.)

The decision then explains that in making this finding, the ALJ "has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence" and "also considered

the medical opinion(s) and prior administrative medical finding(s)." (AR 21 (citing 20 C.F.R. § 404.1529, SSR 16-3p, 20 C.F.R § 404.1520c).)

The ALJ moves on to the two-step process to evaluate Plaintiff's symptoms. (AR 21-22.) The decision identifies the first step as determining if an underlying impairment could reasonably be expected to produce Plaintiff's symptoms. (AR 21.) The ALJ describes the second step as an evaluation of the intensity, persistence and limiting effects of Plaintiff's symptoms to determine the extent to which they limit Plaintiff's work-related activities. (AR 21.) The ALJ notes that whenever Plaintiff's statements "about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must consider other evidence in the record to determine if the claimant's symptoms limit the ability to do work-related activities." (AR 22.)

The decision goes on to summarizes Plaintiff's medical history, including her improvement from physical therapy treatment for neck and back pain (AR 22-23), diagnosis of and treatment for cervical and lumbar spondylosis by a neurosurgeon (AR 23), and diagnosis of and treatment for breast cancer, (AR 23-24). As discussed in more detail below the ALJ also summarizes medical source statements provided by Dr. Andrews on January 9, 2019 and January 20, 2020 and states why he finds Dr. Andrew's opinion unpersuasive. (AR 24-25.)

The decision next addresses Plaintiff's symptoms. (AR 25-26.) The ALJ lists six reasons why any symptom allegations from Plaintiff that preclude her from work at the residual functional capacity assessed are not consistent with the evidence. (AR 25.) Following a list of six reasons, with discussion of medical records, the ALJ then finds Plaintiff's "statements concerning the intensity, persistence, and limiting effects of her symptoms are not entirely consistent with the medical evidence and other evidence for the reasons explained in this decision." (AR 26.)

### D.   Step Four

Relying on a vocational expert and the RFC assessed, the ALJ finds at step four that Plaintiff "is capable of performing her past relevant work as a Senior Tax Auditor, Business Tax Specialist, and as an Auditor." (AR 27.)

## IV.   SCOPE OF REVIEW

Section 405(g) of the Social Security Act allows unsuccessful claimants to seek judicial review of a final agency decision. 42 U.S.C. § 405(g). This Court has jurisdiction to enter a judgment affirming, modifying, or reversing the Commissioner's decision. *See id.*; *see also* 20 C.F.R. § 404.900(a)(5). The matter may also be remanded to the Social Security Administration for further proceedings. 42 U.S.C. § 405(g).

"The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." *Id.* If the Court determines that the ALJ's findings are not supported by substantial evidence or are based on legal error, the Court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001) (citing *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir.1999)). Substantial evidence "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021)(quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)).

If the evidence "is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020) (citing *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)). We may affirm the ALJ's decision even if the ALJ made an error, so long as the error was harmless, meaning it was "inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)).

The Court "must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins*, 466 F.3d at 882

(citation omitted); *see also Ahearn*, 988 F.3d at 1115 ("To determine whether substantial evidence supports the ALJ's determination, we must assess the entire record, weighing the evidence both supporting and detracting from the agency's conclusion.") (citing *Mayes v. Massanari*, 276 F.3d 453 459 (9th Cir. 2001)). The Court may "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014).

## V.   DISCUSSION

Plaintiff argues the ALJ erred in his evaluation of Dr. Andrews' opinion in numerous respects: (1) misstating the record as to Dr. Andrews' treatment notes; (2) ignoring numerous medical records that support Dr. Andrews' opinion; (3) falsely asserting Dr. Andrews' opinion was illegible and does not reference objective medical evidence; (4) improperly disregarding Dr. Andrews' opinion as to mental health limitations based on a lack of training in mental health; and (5) relying on inconsistencies with Plaintiff's oncologist and physical therapist when there was no inconsistency. In addition to addressing most of these arguments, Defendant emphasizes the new regulations applicable to evaluation of a physician opinion and argues the ALJ properly considered Dr. Andrews' opinion under those new regulations. Defendant also argues the ALJ properly explained that Dr. Andrews' own records do not support his extreme limitations and that other records, including those cited by Plaintiff, also do not support the limitations assessed by Dr. Andrews.

### A.   Applicable Legal Standard

Plaintiff's claim is subject to the 2017 amendments governing the evaluation of medical opinions because it was filed after March 27, 2017.[4] 20 C.F.R. § 404.1520c. The revised regulations eliminated the deference given to treating and examining physicians.

---

[4] The new regulation applies to claims filed on or after March 27, 2017.

*Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) (citing 20 C.F.R. § 404.1520c(a)).[5] The new regulations require an evaluation of the "persuasiveness" of medical opinions based on the following factors: supportability, consistency, relationship factors, specialization, and "other factors." § 404.1520c(c)(1)-(5).

"'The most important factors' that the agency considers when evaluating the persuasiveness of medical opinions are 'supportability' and 'consistency.'" *Woods*, 32 F.4th at 791 (quoting § 404.1520c(a)). These are also the only factors the ALJ is always required to specifically explain in the decision. § 404.1520c(b)(2) ("[W]e will explain how we considered the supportability and consistency factors for a medical source's medical opinions … in your determination decision. We *may, but are not required to*, explain how we considered" the other factors) (emphasis added)); *see also Woods*, 32 F.4th at 792 (quoting and emphasizing the same and noting "the ALJ no longer needs to make specific findings regarding these relationship factors").[6]

"Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'" *Woods*, 32 F.4th at 791-92 (quoting § 404.1520c(c)(1)). Under the new regulations, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) …, the more persuasive the medical opinions … will be." § 404.1520c(c)(1).

---

[5] As the Ninth Circuit has explained, "[t]he revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant." *Woods*, 32 F.4th at 792 (The "requirement that ALJs provide 'specific and legitimate reasons' for rejecting a treating or examining doctor's opinion, which stems from the special weight given to such opinions . . . is incompatible with the revised regulations.").

[6] When two medical opinions on "the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same, [the agency] will articulate how [it] considered the other most persuasive factors." § 404.1520c(b)(3) (citing § 404.1520c(c)(3) (relationship factors), (c)(4) (specialization), and (c)(5) (other factors)).

"Consistency means the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" *Woods*, 32 F.4th at 791 (quoting § 404.1520c(c)(2)). "The more consistent a medical opinion(s) … is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) … will be." § 404.1520c(c)(2).

"Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence.'" *Woods*, 32 F.4th at 792. "The agency must 'articulate ... how persuasive' it finds 'all of the medical opinions' from each doctor or other source, ... and 'explain how it considered the supportability and consistency factors' in reaching these findings." *Woods*, 32 F.4th at 792 (citing § 404.1520c(b)).

## B.     Dr. Andrews' Opinion

Dr. Andrews completed a "Physical Medical Opinion" on January 22, 2020 that referenced a medical note for the same date and a January 9, 2019 "Medical Source Statement-Physical." (AR 1074-78; AR 812-813.)[7] Because one of the issues raised by the parties' briefing is the format of Dr. Andrews' opinion, (ECF 24 at 18 n.3, 4), the Court notes that both statements are forms that Dr. Andrews has filled in. Most of the responses consist of marking a box or circling an amount of time, however, as discussed below, there are also hand-written responses. (AR 1074-1078, 812-813.)

### 1.     January 9, 2019 Medical Source Statement

Dr. Andrews completed a "Medical Source Statement-Physical" on January 9, 2019. (AR 812-813 [Ex. 13F at 2-3].[8]) Plaintiff specifically only refers to this medical statement in a footnote, (ECF 24 at 5 n.1.), however, given the ALJ addressed them

---

[7] The Court refers to these individually as medical source statements or statement and collectively as Dr. Andrews' opinion.

[8] This medical statement appears in two different exhibits in the Administrative Record. (AR 811-813 [Ex. 13F], AR 1072-74 [Ex. 30F at 23-24].)

collectively and found Dr. Andrews' opinion unpersuasive, the Court briefly summarizes the January 9, 2019 statement here.

The January 9, 2019 form identifies Plaintiff's limitations in lifting, sitting/standing limitations, the need for breaks, preclusion or limitations on specific activities or working with certain equipment, and upper extremity impairments. (AR 812.) Dr. Andrews finds she can only lift 10 pounds occasionally and less than 10 pounds frequently and that she needs to use a cane if she stands too long. (AR 812.) He also indicates she can only sit for less than one hour in an 8-hour workday, needs to alternate standing and sitting, and that normal breaks would not provide sufficient relief for the need to alternate. (AR 812.) The opinion also indicates that in an 8-hour workday with normal breaks she can only stand and/or walk 20 minutes and sit for one hour. (AR 812.) Dr. Andrews also finds she is precluded from kneeling, crouching, crawling, and can only occasionally (1/3 of a workday) climb, balance or stoop. (AR 813.) She is also restricted from heights, moving machinery, temperature extremes, and chemicals. (AR 813.) Dr. Andrews also finds as to upper extremity impairments, she can only reach, handle, finger, and feel occasionally (1/3 of a workday). For each of these restrictions and at every place the form asks for citation of medical findings in support, Dr. Andrews writes "MRI lumbar cervical." (AR 812-813.)

### 2.    January 22, 2020 Medical Statement

Dr. Andrews' January 22, 2020 opinion also addresses many of the same restrictions as the January 9, 2019 opinion, but includes some additional information. (AR 1074-78.)

The January 22, 2020 statement, like the January 9, 2019 statement, addresses Plaintiff's limitations in sitting, standing, walking, need to shift position, amount of weight she can lift, use of upper extremities, and certain activities. (AR 1075-76.) This form indicates that Plaintiff could sit for two hours at one time before needing to get up, stand for 45 minutes at one time before needing to sit down or walk around, and in an 8-hour workday, stand/walk less than two hours and sit about two hours. (AR 1075.)

Plaintiff needs a position that permits shifting at will from sitting, standing or walking and needs to walk every 30 minutes for 10 minutes. (AR 1075.) She will also need unscheduled breaks of 10 minutes every 30 minutes due to chronic fatigue, pain/paresthesias, and numbness. (AR 1075.) She does not need to elevate her legs, but needs a cane at times due to imbalance and insecurity. (AR 1076.) She can occasionally lift 10 pounds, occasionally twist, rarely stoop, crouch/squat, and climb stairs, and never climb ladders. (AR 1076.) In a section that requests information about the percentage of time Plaintiff can use her hands, fingers, and arms in an 8-hour workday, Dr. Andrews indicates she can use her fingers for fine manipulation 10% of the time and reaching overhead 10% of the time. (AR 1076.)

The January 22, 2020 opinion also provides information not covered by the January 9, 2019 opinion, including how long Dr. Andrews has treated Plaintiff (2000-present) and how frequently he has treated her (2-3 times a year). (AR 1074.) In addition to the MRI listed in the January 9, 2019 opinion, this one additionally lists being prediabetic on labs, workers compensation forms, and hyperlipidemia. (AR 1074.) In response to a question about findings consistent with Plaintiff's complaints, Dr. Andrews also identifies "pain, weakness, MRI, [and] labs." (AR 1078.) It also references his most recent treatment note from that same date, January 22, 2020, in response to two questions; one regarding Plaintiff's symptoms and one about any additional limitations, beyond those already described, that would affect Plaintiff's ability to work at a regular job on a sustained basis. (AR 1074 (question #4), 1077 (questions #13).) In response to a question regarding side effects of medication, the opinion indicates the chemotherapy causes neuropathy and compromised immune system. (AR 1074.) Dr. Andrews has also identified "possible PTSD" as a psychological condition impacting Plaintiff's physical condition (AR 1075), and that she is incapable of even low-stress work because of "possible PTSD." (AR 1077.) Dr. Andrews has also checked boxes indicating that "emotional factors contribute to the severity of symptoms and functional limitations," (AR 1074), she will have good days and bad days, she will be off-task 25% or more of

the time, and she would likely be absent from work "more than four days per month." (AR 1077.)

## C.    Analysis

The Court addresses the issues raised by the parties in the order they appear in the ALJ's evaluation of Dr. Andrews' opinion. The Court then considers whether any errors were harmless or if remand is required.

### 1.   Dr. Andrews' Treatment Notes

The ALJ's evaluation of Dr. Andrews' opinion begins by "acknowledge[ing] the findings expressed by Dr. Andrews' in his January 9, 2019 (Exhibit 30F p. 24) and January 22, 2020, (Exhibit 31F) functional assessment forms of the claimant." (AR 24.) The ALJ decision indicates that "during the hearing, the claimant and her counsel acknowledged that the record is devoid of Doctor Andrews' notes of medical treatment; his name appears in one exhibit (Exhibit 30F)." (AR 24-25 (citing Exhibit 30F).) This is wrong as to both an acknowledgement and as to the state of the record before the ALJ.

Defendant does not identify anywhere in the hearing transcript where Plaintiff or her counsel made such an acknowledgement and does not suggest this was an accurate statement by the ALJ based on the record before the ALJ. Rather, Defendant argues the treatment records from Dr. Andrews that Plaintiff cites as proof there were other records from him do not negate the ALJ's reasoning in finding Dr. Andrews' opinion unpersuasive. (ECF 24 at 14.) Defendant essentially argues this was a harmless error.

Having reviewed the transcript of the hearing, the Court finds neither Plaintiff nor her counsel made any acknowledgement regarding treatment records from Dr. Andrews. The only mention of Dr. Andrews during the hearing was Plaintiff answering two questions about him posed by the ALJ. (AR 45-46.) The ALJ asked which doctor best knows her condition, and she identified Dr. Andrews. (AR 45-46.) The ALJ then asks if Dr. Andrews has provided an opinion, and Plaintiff's counsel identifies the two medical

source statements addressed by the ALJ.[9] (AR 46.) There is no specific acknowledgment during the hearing regarding the record being devoid of Dr. Andrews' treatment notes.

The record is also not "devoid of Doctor Andrews' notes of medical treatment" and his name appears on numerous exhibits, not just one as asserted by the ALJ. (AR 24-25 (citing AR 1050-73 [Ex. 30F]).) Even just a review of the list of exhibits at the end of the ALJ decision under "Medical Records" makes clear there are numerous records from Dr. Andrews (AR 31-33 [Exhibit 2F] (progress notes), AR 609-639 [Ex 6F] (progress notes), AR 811-813 [13F] (medical opinion), AR 1050-1073 [30F] (office treatment records), 31F (medical opinion).) Based on this listing of exhibits following the decision, the record contains additional progress or treatment notes with records covering at least portions of May 2014 through January 2020. (AR 31-33 (listing dates covered by and number of pages in records).) Two of the exhibits listed are the January 9, 2019 and January 22, 2020 medical source statements the ALJ acknowledges and a third is the one exhibit referenced by the ALJ (Exhibit 30F). However, because the final pages of Exhibit 30F are a duplicate version of Dr. Andrews' January 9, 2019 statement, it is unclear if the ALJ was only referring to the January 9, 2019 statement or was also aware the remainder of this exhibit additionally contained three treatment notes. Regardless of the ALJ's awareness of these additional treatment records, his finding that the record was "devoid of Doctor Andrews' notes of medical treatment," and that his name appeared on only one exhibit was incorrect and not supported by substantial evidence.

The Court addresses whether this error was harmless below after addressing Plaintiff's other arguments regarding errors by the ALJ.

---

[9] It is possible the ALJ may have confused Dr. Andrews with Dr. Woods, a psychiatrist that provided an opinion. As to Dr. Woods, there is an acknowledgment by Plaintiff's counsel during the hearing that there are no treatment notes from Dr. Woods. (AR 48-49.) However, there is no discussion of a lack of treatment notes from Dr. Andrews.

**2.   Handwritten Explanations and Objective Medical Evidence**

Plaintiff argues the ALJ falsely asserts Dr. Andrews' January 22, 2020 medical source statement is mostly illegible and does not reference objective medical evidence. (ECF 24 at 8.) In the portion of the decision addressing Dr. Andrews' opinion, the ALJ decision states "[a]s discussed above, the handwritten explanations are mostly illegible and reference no objective medical evidence relied upon." (AR 25.) Earlier in the decision, as part of the chronological summary of Plaintiff's medical history, the ALJ summarized both medical statements. (AR 24.) As to each, the ALJ noted that Dr. Andrews' medical source statements were illegible. (AR 24 (addressing January 9, 2019 statement, "While much of the doctor's handwriting is illegible; and therefore, of no use, it was noted that the boxes were checked on the form."); AR 24 (addressing January 22, 2020 statement, "Again, that form was mostly illegible.").

On this point, the Court partially agrees with Plaintiff. As Plaintiff accurately notes, in response to a question to "[i]dentify significant signs and laboratory findings" on the January 22, 2020 form, Dr. Andrews writes "MRI, … workers comp forms, prediabetic on labs, [and] hyperlipidemia." (ECF 24 (citing AR 1074).) However, the Court notes that had Plaintiff not quoted it in her brief, hyperlipidemia or the word that follows it, would be very hard to decipher. Additionally, while Plaintiff does not discuss the January 9, 2019 form, the Court notes that Dr. Andrews repeats "MRI lumbar cervical" as medical findings supporting numerous limitations on Plaintiff's ability to lift, sit, stand, walk, need for breaks, etc. (AR 812-813.) There are, however, portions of some answers that could be considered illegible. (AR 812 (portion of answer to question 2.B), 1074 (portion of answers to questions 5 and 6).)

The ALJ's statement regarding objective medical evidence is also partially accurate. The ALJ indicated Dr. Andrews' explanations "reference no objective medical evidence relied on." (AR 25 ("the handwritten *explanations* are mostly illegible and *reference no objective medical evidence relied on*.") (emphasis added). Plaintiff interprets this statement to mean the ALJ found there was no objective medical evidence listed in

14

Dr. Andrews' January 22, 2020 statement when, in fact, Dr. Andrews does list objective medical evidence. (ECF 24 at 8 (citing AR 1074).) The Court would agree that Dr. Andrews does list some objective medical evidence in both statements. As summarized above, Dr. Andrews lists Plaintiff's MRI numerous times in the January 9, 2019 statement in response to numerous questions. (AR 812-813.) And, in response to a request to "[i]dentify significant signs and laboratory findings," on the January 22, 2020 form, Dr. Andrews lists Plaintiff's "MRI … workers comp forms, prediabetic on labs, [and] hyperlipidemia." (AR 1074.) To the extent the ALJ decision is interpreted to mean the ALJ found Dr. Andrews' opinion unpersuasive because he listed no objective medical evidence, the ALJ was incorrect.

However, the Court notes it is also possible the ALJ's finding that "the handwritten explanations are mostly illegible and reference no objective medical evidence relied on" to mean Dr. Andrews' opinion was unpersuasive because it lacked any legible *explanations* of objective medical evidence he relied on. (AR 25.) First, there is no explanation how the objective medical evidence listed connects to any limitations. If this had been the ALJ's point, the ALJ's finding would be correct because Dr. Andrews' *explanations* do not cite any objective medical evidence. Second, even where Dr. Andrews lists Plaintiff's MRI as the medical finding supporting his circled or checked off limitations for Plaintiff, there is no explanation how the objective medical evidence listed supports the limitations he assessed. "Supportability means the extent to which a *medical source* supports the medical opinion by *explaining* the 'relevant . . . objective medical evidence.'" *Woods*, 32 F.4th at 791-92 (quoting § 404.1520c(c)(1))(emphasis added). And "[t]he more relevant the objective medical evidence and *supporting explanations* presented by a medical source are to support his or her medical opinion(s) …, the more persuasive the medical opinions … will be." § 404.1520c(c)(1).

The challenge with applying this reasoning is the ALJ did not provide it. His statement that Dr. Andrews does not "reference objective medical evidence relied upon" is not entirely accurate because Dr. Andrews does cite some objective medical evidence,

albeit very little. Without any indication it was the lack of explanation from Dr. Andrews how the objective medical evidence supported his opinion, the Court comes too close to affirming the ALJ on a ground "upon which he did not rely." *Garrison*, 759 F.3d at 1010 (The Court may "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely.")

In summary, the ALJ did err to the extent he found Dr. Andrews' opinions unpersuasive for not listing any objective evidence in his medical source statement. Dr. Andrews did list some objective medical evidence in each. And, while the ALJ might have found Dr. Andrews' opinion unsupported because he did not explain how the objective medical evidence identified supported his limitations, the ALJ did not.

### 3.   Medical Records

Plaintiff asserts "the ALJ citing Exhibit 10F[10] p. 13, 14, and 15 states that on January 22, 2020 and January 9, 2019, Dr. Andrews assessed no neurologic or physiological localized findings as well as no weakness or paresthesia [and] exams in other exhibits are also unremarkable." (ECF 24 at 6-7 (citing AR 25 (ALJ decision) and ALJ decision's citation of AR 1003-1038 [Ex. 28F] and AR 1082 [Ex. 32F at 4] (one page of a chart note from January 31, 2020).) Plaintiff then argues the ALJ should not have relied on two examinations to conclude Dr. Andrews did not support his opinion. (ECF 24 at 7.) Plaintiff goes on to identify numerous records she asserts do support Dr. Andrews' opinion and argues the ALJ's contrary finding is not supported by substantial evidence for this reason. (ECF 24 at 8.) Defendant counters that the ALJ explained how Dr. Andrews' records did not support his extreme limitations with citation of treatment records. (ECF 24 at 14 (citing AR 25, 1000-32, 1062-71, and 1082).) Defendant also

---

[10] The Court agrees with Plaintiff that the ALJ was likely intending to cite Exhibit 30F at pages 13, 14, and 15 rather than 10F (ECF 24 at 7 n.2) because Exhibit 10F is only ten pages and consists of treatment records from follow-up visits with an oncologist, not Dr. Andrews. (AR 771-780.) However, as discussed below, these pages as to 30F are not accurate either.

explains that some of the records Plaintiff summarizes are the same records addressed by the ALJ. (ECF 24 at 14-15 (citing AR 23-25).)

There is an error in the ALJ's reliance on the two records it appears the ALJ actually relied on for this point, however, there are also problems with Plaintiff argument, including the lack of explanation from Plaintiff how any of the records she summarizes support Dr. Andrews' opinion.

### a)    January 22, 2020 and January 9, 2019 Treatment Records

The ALJ decision states"[o]n January 22, 2020, Dr. Andrews assesses claimant with no neurologic or physiological localized findings as well as no weakness or paresthesia (Exhibit 10F p. 13, 14). The doctor's only other evaluation occurred on January 9, 2019 with similar findings (Exhibit 10F p.15)." (AR 25.) Both of these statements are incorrect as to 10F because Exhibit 10F is not a medical record from Dr. Andrews and it does not have pages 13, 14, or 15. (AR 771-781 [Ex. 10F 1-10].) However, even giving the ALJ the benefit of a citation to Exhibit 30F these statements are both still incorrect.[11]

The first statement, regarding January 22, 2020, is incorrect because it does not cite Dr. Andrews January 22, 2020 treatment record and the January 22, 2020 treatment record does not assess these findings. The pages of Exhibit 30F cited for the first statement are not from January 22, 2020. (AR 1062-1063 [Ex. 30F 13-14].) The pages cited by the ALJ are from an August 20, 2019 treatment note. (AR 1058-1063.) Additionally, in these same sections of the January 22, 2020 treatment note, Dr. Andrews does not make these assessments. (AR 1056.) As discussed further below, in the January 22, 2020 treatment note, Dr. Andrews provides some reasons for the limitations he assesses in his opinion and identifies "unstable gait" under "Neuro." (AR 1056.)

---

[11] As Plaintiff acknowledges, this is the most likely exhibit for the ALJ to have intended to cite. It appears to be the only possibility given, as detailed above, the ALJ was not aware of any of the other records from Dr. Andrews. (V.C.1.)

The second statement regarding Dr. Andrews' "evaluation that occurred on January 9, 2019 with similar findings," relies on a record from January 9, 2019, but that page contains no "similar findings" to "no nerologic or physiological localized findings as well as no weakness or paresthesia." (AR 1064 (Ex. 30F at 15).) The page lists Plaintiff's "Vitals for this encounter" with no reference to anything similar to the ALJ's statement. (AR 1064 [Ex. 30F].) A later section of the same record does indicate "Neuro: Physiological, no localized findings." (AR 1070 [Ex. 30F at 21].)

These errors are particularly concerning because, as discussed above, the ALJ erroneously found the record devoid of Dr. Andrews' treatment notes. (V.C.1.) Additionally, these statements give the impression the ALJ was unaware of or did not review Dr. Andrews' January 22, 2020 treatment note. This is significant because Dr. Andrews cites his January 22, 2020 treatment note twice in support of his January 22, 2020 medical source statement. (AR 1074, 1077.) In response to the question "List your patient's symptoms, including pain dizziness, fatigue, etc." he writes "see attached note 1/22/2020." (AR 1074.) In response to a question asking him to "describe any other limitations … that would affect your patient's ability to work at a regular job on a sustained basis," he writes "see note dated 1/22/2020." (AR 1077.) The January 22, 2020 note then explains numerous limitations in Dr. Andrews' opinion, including the need for naps, frequent absences due to fatigue, numerous reasons for fatigue, reasons for limitations on standing, and complications from cancer treatment. (AR 1056.)

Given these errors, the Court cannot find the ALJ's finding that Dr. Andrews assessed "no neurologic or physiological localized findings as well as no weakness or paresthesia" in the January 22, 2020 and January 19, 2019 medical source statements was supported by substantial evidence.

### b)   Other Records Plaintiff Summarizes

Plaintiff argues the ALJ's finding that the record does not support Dr. Andrews' opinion is not supported by substantial evidence because there are records that *do* support his opinion. (ECF 24 at 7-8.) Plaintiff details the results of Plaintiff's May 20, 2016

cervical and lumbar MRI. (ECF 24 at 7 (citing AR  327, 334, and 663-64.) Plaintiff also points to her referral to Dr. Strizak for an orthopedic examination and her reports to him of a long history of recurring low back, knee, ankle, and foot pain. (ECF 24 at 7 (citing AR 865-866).) Plaintiff additionally relies on the results of a physical examination by Dr. Strizak and his diagnosis. (ECF 24 at 7-8 (citing AR 865-66).) Plaintiff then concludes, "[t]hus contrary to the ALJ's claim, the record does support Dr. Andrews' opinion and the assertion to the contrary is not supported by substantial evidence." (ECF 24 at 8.) While the Court understands Plaintiff is arguing the ALJ should have relied on these records instead of others in considering supportability, there are three problems with this argument.

First, Plaintiff has not provided any support for the assertion that these records support Dr. Andrews' opinion. It might be different if any of the records themselves resulted in limitations similar to Dr. Andrews. However, it is not clear that the records summarized by Plaintiff are supportive of or even consistent with Dr. Andrews' opinion. *See Woods*, 32 F.4th at 791 ("Consistency means the extent to which a medical opinion is 'consistent … with the evidence from other medical sources and nonmedical sources in the claim.") For example, Plaintiff relies on a referral for an orthopedic examination and quotes from the orthopedist's physical examination and diagnosis, (ECF 24 at 7-8), but there is nothing in this medical record or even Plaintiff's summary of it that would indicate these records are consistent with Dr. Andrews' limitations. The Court certainly cannot find the rest of the ALJ's analysis of supportability and consistency are not supported by substantial evidence solely because Plaintiff asserts without explanation that these records support Dr. Andrews' opinion.

Second, it is not clear the records summarized by Plaintiff, other than the MRI results discussed further below, should even be part of the ALJ's supportability analysis

given *Dr. Andrews* makes no reference to these records.[12] As noted above, "[s]upportability means the extent to which *a medical source supports* the medical opinion by explaining the 'relevant … objective medical evidence.'" *Woods*, 32 F.4th at 791-92 (quoting § 404.1520c(c)(1)) (emphasis added). "The more relevant the objective medical evidence and supporting explanations *presented by a medical source* are to support his or her medical opinion(s) … the more persuasive the medical opinions … will be." § 404.1520c(c)(1) (emphasis added). Under the new regulations, the ALJ appears to be permitted to find an opinion more or less persuasive depending on how well a medical source explains the objective medical evidence. The orthopedic surgeon's examination, findings, and diagnosis of Plaintiff were not cited or explained by Dr. Andrews. (AR 1074-78, 812-13.) And, even if the supportability factor analysis were interpreted to include considering the supportability of his opinion based on any medical record from Dr. Andrews, the fact that Plaintiff was referred by Dr. Andrews to an orthopedist would only support that she needed a referral for left ankle/foot issues, not that she was as limited as Dr. Andrews' opinion indicated. (AR 865 ("Thank you for referring [Plaintiff] for orthopedic consultation regarding her left ankle/foot.")

Third, while the ALJ is required to explain how persuasive an opinion is with an explanation of supportability and consistency supported by substantial evidence, the Court is not persuaded "supported by substantial evidence" means discussing every single medical record. § 404.1520c(b)(2) ("[W]e will explain how we considered the supportability and consistency factors for a medical source's medical opinions … in your determination decision.") The ALJ certainly should not completely ignore significant medical evidence that was consistent with or supported Dr. Andrews' opinion. For example here, the ALJ appears to have failed to consider a treatment record from Dr. Andrews that Dr. Andrews cited twice in his January 22, 2020 statement and that record

---

[12] Plaintiff does not argue these records should have been considered as part of the ALJ's consistency analysis.

explained some of the limitations Dr. Andrews assessed. However, the Court is not persuaded the ALJ erred in not considering all the records Plaintiff lists in her brief without further explanation how they support Dr. Andrews' opinion under the new regulations.

### c)   MRI Results

Plaintiff points to her MRI results as a record that supports Dr. Andrews' opinion. Defendant argues the ALJ's analysis explains how Dr. Andrews' records do not support his extreme limitations, including lack of neurological issues, weakness, or paresthesia and the MRI results not supporting the less-than-sedentary limitations assessed by Dr. Andrews. (ECF 24 at 14-15.)

The ALJ is not required to explicitly address every single record in determining whether an opinion is persuasive. (V.C.3.b).) However, unlike the records discussed above, Dr. Andrews' opinion relies in part on Plaintiff's MRI results, (V.B) and Defendant asserts that the MRI results do not support the less-than-sedentary limitations assessed by Dr. Andrews. Given both parties' reliance on these results, the Court considers whether the ALJ's implied discounting of Dr. Andrews' opinion based on the MRI results provides sufficient "explanation supported by substantial evidence." *Woods*, 32 F.4th at 792.

The ALJ's analysis of Dr. Andrews' opinion acknowledges the results of Plaintiff's lumbar and cervical MRI. (AR 25.) The decision notes the "mild scoliosis and mild foraminal stenosis," but finds these results are "consistent with DDS doctors residual functional capacity used herein." (AR 25.) As to the cervical MRI, the ALJ acknowledges it "shows canal stenosis, but the record fails to provide neurological evidence to confirm any reduced residual functional capacity." (AR 25.) The ALJ goes on to state that "[d]octors at DDS reviewed these diagnostic findings before rendering their light residual functional capacity." (AR 25 (citing AR 480, 484 [Ex. 4F at 10, 14]).) The ALJ also states the "doctors assessed no bilateral overhead reaching or work around

unprotected heights to account for any deteriorated function due to the diagnostics related to the cervical/lumbar spine." (AR 25.)

As an initial matter, the ALJ never indicates that he finds these MRI results do not support, or are inconsistent with, Dr. Andrews' opinion, but it could be implied. The ALJ states that the mild scoliosis and foraminal stenosis are "consistent with DDS doctors residual functional capacity used herein" and their RFC is less restrictive than the limitations in Dr. Andrews' opinion. (AR 25.) However, the lack of further explanation how these summarized results are inconsistent with or not supportive of Dr. Andrews' opinion is problematic. "[A]n ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods*, 32 F.4th at 792.

As to the ALJ's statement that "the record fails to provide neurological evidence to confirm any reduced residual functional capacity" as to Plaintiff's severe canal stenosis, it is not clear if the ALJ is relying on his earlier finding regarding Dr. Andrews' assessing no neurologic issues (V.C.3.a) or if there is another basis for that conclusion. Additionally, while the ALJ notes the DDS doctors' RFC, this does not explain how the MRI results are inconsistent with Dr. Andrews' opinion. The ALJ just states the DDS doctors considered these results and assessed a light RFC. This does not explain what is different or how that accounts for the MRI results Dr. Andrews' relied on. Even if the Court interprets these statements as the ALJ finding an inconsistency between Dr. Andrews' opinion and the DDS doctors' RFC, there is still no explanation from the ALJ how they are inconsistent or how that justifies discounting Dr. Andrews' opinion.

To summarize as to the medical records, the ALJ erred in discounting Dr. Andrews' opinion based on the January 22, 2020 and January 9, 2019 treatment records because he does not appear to have considered the January 22, 2020 treatment note and the portion of the January 9, 2019 treatment note cited does not support the ALJ's finding. As to the other records cited by Plaintiff, (ECF 24 at 6-8), Plaintiff has not explained how these records are properly considered in the supportability analysis. And,

while the ALJ did address the MRI results summarized by Plaintiff, how they are inconsistent with or not supportive of Dr. Andrews' opinion is not clear.

### 4. Mental Health Assessment

Plaintiff argues the ALJ erred in evaluating Dr. Andrews' mental health assessment. (ECF 24 at 8-9.) Plaintiff asserts that because Dr. Andrews is a doctor, he is "qualified to answer two questions about possible psychological impacts on [Plaintiff's] physical condition." (ECF 24 at 9 (citing *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987).) In response, Defendant argues the ALJ properly discounted Dr. Andrews' opinion on this basis because he treated her primarily for physical issues. Defendant also notes Plaintiff fails to identify any findings by Dr. Andrews that would support his assessment and points to the ALJ's unchallenged findings earlier in the decision that Plaintiff's mental health impairments are non-severe. (ECF 24 at 15-16.)

Plaintiff describes the two questions as one regarding stress and the other regarding whether Plaintiff's psychological condition affects her physical condition. (ECF 24 at 8-9 (citing AR 1055 and 1077).) As to work stress, the form asks "[t]o what degree can your patient tolerate work stress," and Dr. Andrews selects "[i]ncapable of even 'low stress' work." (AR 1077.) As reason for the conclusion, Dr. Andrews wrote "possible PTSD." (AR 1077). In response to "[i]dentify any psychological conditions affecting your patient's physical condition," Dr. Andrews selects "other" and handwrites "possible PTSD." (AR 1075.[13]) The ALJ states, "[r]egarding this doctor's mental health assessment, there is no indication this doctor possesses training in mental health or any other specialty. The claimant is not on any mental health medication. [S]he never admitted to any hospital or mental health facility." (AR 25.)

---

[13] The Court presumes Plaintiff intended to cite AR 1075 as to the second question referenced. The page cited by Plaintiff (AR 1055) is a page within Plaintiff's January 22, 2020 treatment note, but it does not contain any questions. (AR 1055.)

1
2
3
4
5

The ALJ did not err in discounting Dr. Andrews' mental health assessment because: (1) the ALJ did not find Dr. Andrews unqualified as suggested by Plaintiff; (2) the ALJ provided other reasons (lack of medication and hospitalizations) for finding Dr. Andrews' mental health assessment unpersuasive; and (3) the ALJ's earlier analysis of Plaintiff's mental health also supports the ALJ's finding. (AR 25.)

6
7
8
9
10
11
12
13
14
15
16
17
18
19
20

The ALJ did not find Dr. Andrews unqualified to answer these questions or fail to acknowledge Dr. Andrews' opinion on Plaintiff's mental health. Unlike *Sprague v. Bowen*, cited by Plaintiff, the ALJ here did not ignore Dr. Andrews' opinion regarding mental health because he was not a psychiatrist. *See* 812 F.2d at 1231-32 (Finding treating physician opinion on mental health and the claimant's testimony as to mental health were qualified evidence that should have been considered).[14] Rather, he noted the lack of any indication he had a specialty in mental health. A physician's specialty is one of the factors listed in the new regulations to be considered in evaluating the persuasiveness of an opinion. § 404.1520c(c)(4). As noted above, it is not one of the factors the ALJ is *required* to explicitly address in a decision. § 404.1520c(b)(2)) ("We may, but are not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when we articulate how we consider medical opinions … in your case record."). However, there is nothing in the regulations that precludes the ALJ from noting a lack of specialty in evaluating the persuasiveness of an opinion.

21
22
23
24
25
26

The ALJ also did not rely entirely on Dr. Andrews' lack of specialty to find his mental health assessment unpersuasive. The ALJ relied on the lack of objective medical evidence in support. The ALJ noted Plaintiff was not on any mental health medication and she had never been admitted to the hospital or any mental health facility. (AR 25.) Plaintiff acknowledges these findings (ECF 24 at 8), but does not dispute them or suggest

27
28

---

[14] The Court additionally notes that the *Sprague* decision was not applying the current regulations regarding the evaluation of a physician opinion.

they were not an appropriate basis to find Dr. Andrews' mental health assessment unpersuasive based on supportability or consistency. These types of objective medical evidence, had they existed, might support Dr. Andrews' unexplained conclusions that Plaintiff's "possible PTSD" affects her physical condition and she was "incapable of even 'low stress' work because of "possible PTSD." *See Woods*, 32 F.4th at 791-92 ("Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant … objective medical evidence.'"). These are entirely unexplained and unsupported assertions. The ALJ was permitted to point to the absence of objective medical evidence in finding Dr. Andrews' mental health assessment unpersuasive under this standard, particularly given Dr. Andrews' opinion provides no explanation or even citation of any evidence in support of his responses to these two questions. Additionally, Plaintiff does not point to any portion of the record the ALJ should have or failed to consider in assessing the supportability and consistency of Dr. Andrews' opinion that Plaintiff was incapable of even low stress work based on possible PTSD.

The Court also notes that the ALJ discussed the severity of Plaintiff's mental health impairments at some length and provided a detailed analysis of Plaintiff's limitations in four functional areas. (AR 19-20.) The ALJ found, and Plaintiff has not challenged here, that her mental health limitations in each were only mild. (AR 19-20.) While the ALJ acknowledges these are not an RFC assessment, the Court notes that this analysis precedes the ALJ's conclusion that Plaintiff's "allegation of disability due to post-traumatic stress disorder is not a severe impairment" and his discounting of Dr. Andrews' mental health assessment for the reasons discussed above. (AR 21, 24-25.)

The ALJ did not err in discounting Dr. Andrews' mental health assessment.

### 5.   Physical Therapy and Oncology Treatment Records

Plaintiff argues the ALJ erred in finding Dr. Andrews' opinion unpersuasive based on inconsistency with her physical therapy and oncology treatment records. (ECF 24 at 9.) As to oncology records, Plaintiff asserts the ALJ's generalization about her

improvement while in remission from cancer is not substantial evidence when the ALJ did not cite any particular reports from her oncologist that are inconsistent, and being better in remission is not substantial evidence of improvement. (ECF 24 at 9.) As to physical therapy, Plaintiff argues her improvement from it is actually consistent with Dr. Andrews' opinion regarding her sitting and standing limitations because she improved to a level that aligns with Dr. Andrews' opinion. (ECF 24 at 9.) Defendant argues Plaintiff's treatment history, including the assessments made by Plaintiff's physical therapist and oncologist are more consistent with the ALJ's RFC than Dr. Andrews' opinion. (ECF 24 at 15.) Defendant notes the ALJ provided a detailed review of Plaintiff's treatment history, including physical therapy and oncology. (ECF 24 at 15 (citing AR 22-23).) Additionally, Defendant argues Plaintiff fails to identify any records supporting Plaintiff's need for a cane, requirements to shift position, or other extreme and unsupported limitations. (AR 24 at 15.)

In finding Dr. Andrews' opinion unpersuasive, the ALJ states, "his assessment is not consistent with the reports by claimant's treating oncologist nor the physical therapist who indicated that claimant's back and neck pain showed dramatic improvement." (AR 25.) There is no citation of any records or further discussion in addressing Dr. Andrews' opinion, however, earlier in the decision the ALJ's chronological summary of Plaintiff's medical history discusses Plaintiff's improvement based on physical therapy and notes her follow-up oncology records. (AR 22-24.)

### a)   Oncology

The ALJ summarizes Plaintiff's improvement based on oncology treatment records in his summary of Plaintiff's medical history before addressing Dr. Andrews' opinion specifically. (AR 23-24.) The summary notes her breast cancer diagnosis, chemotherapy and radiation treatments, mastectomies, and reconstruction in 2010-2012. (AR 23.) The ALJ then notes follow-up visits showing no evidence of recurrence. (AR 24.)

It is difficult to determine whether there is an inconsistency between Dr. Andrews' opinion and the Plaintiff's oncology records based on improvement because Dr.

Andrews's only statement related to cancer in his medical source statement is brief and has no time frame associated with it, and the ALJ's explanation of the inconsistency consists only of his summaries of oncology records and an assertion of improvement.

The only mention of Plaintiff's cancer by Dr. Andrews was in his January 22, 2020 medical source statement. (AR 1074.) In response to a question asking Dr. Andrews to "[d]escribe the treatment and response including any side effects of medication that may have implications for working, *e.g.* drowsiness, dizziness, nausea, etc.," he writes chemotherapy neuropathy [and] compromised immune sys[tem]." (AR 1074.) If he was suggesting these side effects were ongoing, it might be inconsistent with her follow-up oncology reports showing no recurrence and generally feeling well, but if they were historical then there would be no apparent inconsistency with Dr. Andrews' opinion.[15]

However, the ALJ does not identify which part of Dr. Andrews' opinion is inconsistent with her improvement in terms of her oncology medical records. The Court would agree that the records the ALJ summarizes reflect improvement in that Plaintiff no longer has cancer and is not being treated for it. However, based on the summaries provided by the ALJ and this single reference to improvement, it is not clear how these records of no recurrence of cancer are inconsistent with Dr. Andrews' opinion. (AR 25.) "Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence. *Woods*, 32 F.4th at 792. Even giving the ALJ the benefit of his prior summaries, the Court cannot find the ALJ provided an explanation supported by substantial evidence based on Plaintiff's oncology records.

---

[15] The Court recognizes this is to some extent an issue of Dr. Andrews not supporting his opinion with any explanation, even to simply note whether these side effects from her chemotherapy were ongoing or only applicable when she was receiving treatment. However, it is clear from the ALJ's analysis that on this point, he is addressing consistency, not supportability.

b)   **Physical Therapy**

Whether the ALJ's finding that Dr. Andrews' opinion is inconsistent with reports of Plaintiff's "physical therapist who indicated that the claimant's back and neck pain showed dramatic improvement" is supported by substantial evidence is a closer question. Plaintiff argues her improvement from physical therapy is actually consistent with Dr. Andrews' opinion regarding her sitting and standing limitations because she improved to a level that aligns with Dr. Andrews' opinion. (ECF 24 at 9 (citing AR 604 and 1075).) In support of this assertion, Plaintiff cites a September 21, 2016 treatment record from Plaintiff's physical therapist that indicates as to light housework "slight difficulty, pain," and as to sitting "1 hour, mild stiffness/pain." (AR 604.) Defendant does not dispute this point, but argues instead that Plaintiff's physical therapy treatment history is "more consistent with the ALJ's RFC than Dr. Andrews' extreme assessment" and that Plaintiff does not identify records supporting the need for a cane, or required shifting positions, or "the other extreme and unsupported limitations Dr. Andrews' assessed." (ECF 24 at 15.)

The Court first notes that the ALJ's single statement that Dr. Andrews' "assessment is not consistent with the reports by claimant's … physical therapist who indicated that the claimant's back and neck pain showed dramatic improvement" without further explanation or citation of any medical records that are inconsistent is not sufficient. However, as Defendant noted, the ALJ provided a detailed review of Plaintiff's treatment history that included summaries of her progress from physical therapy. (AR 22-24.)

The ALJ details Plaintiff's reported back injury and MRI scans in 2003 and other information about her condition at the time she was referred to physical therapy in 2015. (AR 22.) The ALJ decision indicates that at the time she was referred, on December 22, 2015, she reported moderate difficulty with light housework, and she could only sit for 21-30 minutes. (AR 22.) She indicated pain was aggravated by sitting too long and alleviated by heat/hot showers, ice, and medication. (AR 22.) The ALJ's summary also indicates her physical therapist reported she presented with poor core strength and

deficits in flexibility and range of motion. (AR 22.) The ALJ decision then goes on to detail her improvement from physical therapy, including to only slight difficulties in light housework, sitting capabilities improving to one hour with no more than mild stiffness, and her discharge from physical therapy in November 2016. (AR 22-23 (citing AR 320-470 [Ex. 3F] and AR 485-608 [Ex. 5F]).)

The ALJ also discusses Plaintiff's improvement from physical therapy in summarizing Plaintiff's visit to a neurosurgeon, Dr. Binder. (AR 23 (citing AR 471-484 [Ex. 4F] for entire summary of this record).) The ALJ indicates that Dr. Binder noted her physical therapy progress with both neck and back pain, and she gradually increased her exercises. (AR 23.) Dr. Binder reviewed Plaintiff's 2016 MRI scans and noted degenerative disc disease, severe canal stenosis, and foraminal stenosis, and Dr. Binder diagnosed cervicalgia, lumbago, and cervical and lumbar degenerative disc disease. (AR 23.) The ALJ's summary also indicates these conditions improved dramatically with physical therapy and diet/exercise changes. (AR 23.)

Despite these detailed summaries, it is unclear how the ALJ found them inconsistent with Dr. Andrews' opinion without any explanation. The Court would agree that overall, these records give the impression of significant improvement with back and neck pain from physical therapy. And a record from Plaintiff's visit when she was discharged from physical therapy indicated that "[t]hough her symptoms aren't gone, …they are reduced and she is able to be more active" and "overall she is very comfortable with how her symptoms are now, and with the knowledge she has to manage them and be able to perform a HEP [home exercise program]." (AR 598.) However, the same treatment record indicates, similar to the one cited by Plaintiff, that when discharged in 2016, after this improvement, her functional limitation in sitting was less than what Dr. Andrews' assessed in 2020. (AR 598 (November 21, 2016 visit indicating "1 hour, mild stiffness/pain" as to sitting and "[t]he one main position that still bothers her is sitting."); AR 1075 (Plaintiff can sit for 2 hours "at one time … before needing to

get up.").) It is simply not clear if she improved to a level better than assessed by Dr. Andrews as would be required for her improvement to be inconsistent with his opinion.

Defendant asserts "Plaintiff does not point to any records that support Plaintiff's need for a cane, or required shifting positions, or the other extreme and unsupported limitations Dr. Andrews assessed" and argues the ALJ's summaries are "more consistent with the ALJ's RFC than Dr. Andrews' extreme assessment." (ECF 24 at 15.) However, the Court is not persuaded it is the Court's or Plaintiff's responsibility to explain additional ways Plaintiff's physical therapy records are consistent with Dr. Andrews' opinion to counter the ALJ's unexplained assertion that Dr. Andrews' opinion is inconsistent with physical therapy improvement. Nor is it the Court's responsibility to determine whether more than 200 pages of physical therapy notes are more consistent with the ALJ's RFC than Dr. Andrews' assessment. (AR 320-470 [Ex. 3F] and AR 485-608 [Ex. 5F]) It is the ALJ's responsibility to explain how he "considered the … consistency factor[] in reaching [a] finding." *Woods*, 32 F.4th at 792; *see also Garrison*, 759 F.3d at 1010 (Courts may "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely."). Additionally, while the Court has considered the ALJ's summaries regarding physical therapy, without any explanation from the ALJ how they are inconsistent with Dr. Andrews' opinion, the Court still cannot find the ALJ has provided an explanation supported by substantial evidence. *Woods*, 32 F.4th at 792.

### D.   Harmless Error

When, as here, the ALJ has erred, the Court must consider whether the error was harmless. "ALJ errors in social security cases are harmless if they are 'inconsequential to the ultimate non-disability determination.'" *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015) (quoting *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1055-56 (9th Cir. 2006)); *see also Batson v. Comm'n Soc. Sec., Admin.* 359 F.3d 1190, 1197 (9th Cir. 2004) (finding error harmless if it "does not negate the validity of the ALJ's ultimate conclusion.") (citations omitted). However, "where the magnitude of an ALJ error is

more significant, then the degree of certainty of harmlessness must also be heightened before an error can be determined to be harmless." *Marsh*, 792 F.3d at 1173. "In other words, the more serious the ALJ's error, the more difficult it should be to show the error was harmless." *Id.*

As discussed above, here the ALJ erred in a number of respects in finding Dr. Andrews' opinion unpersuasive. The most significant of these errors was concluding the record was "devoid of Dr. Andrews' noted of medical treatment" and that his name appeared in only one exhibit. (V.C.1.) This might have been harmless if the ALJ was otherwise aware of or had considered the January 22, 2020 treatment record. This record in particular is significant because Dr. Andrews referenced it twice in his January 22, 2020 medical source statement. However, as discussed above, it appears the ALJ did not review or consider that medical record based on his citation of a different record within the exhibit when referring to the January 22, 2020 treatment record. (V.C.3.a.) The January 22, 2020 treatment record also appears to support Dr. Andrews' opinion, at least in part, because, as noted above, it explains the basis for some of the limitations he identifies in the January 22, 2020 medical source statement. The Court is not necessarily finding that every limitation is supported by this medical record, but it is the record associated with the medical source statement of the same date and it is cited in support by Dr. Andrews and the ALJ did not consider it. This is particularly problematic when the ALJ states the record is otherwise "devoid of Doctor Andrews' notes of medical treatment." (AR 24.) This casts doubt on the entirety of the ALJ's supportability finding, particularly given the lack of explanation by the ALJ in finding Dr. Andrews' opinion unsupported. (V.C.2, V.C.3.a), V.C.3.c), V.C.5.)

The Court has considered whether the errors in the supportability analysis might be harmless based on the consistency analysis. However, the ALJ's generalizations about inconsistency make it challenging to find the supportability errors inconsequential. The ALJ does not indicate what if any limitations or portions of Dr. Andrews' opinion he finds inconsistent with records. As noted above, the ALJ summarizes the MRI results and

indicates they are consistent with the RFC he assesses because the DDS doctors reviewed Plaintiff's MRI results and assessed the RFC the ALJ adopted. Because there is no explanation how the MRI results or any other records are inconsistent with Dr. Andrews' opinion, the Court could not find it is supported by substantial evidence. *Woods*, 32 F.4th at 792 ("Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence.")

However, the Court find's remand of the case is required rather than an award of benefits. "[I]f the ALJ has erred, we determine whether 'the record has been fully developed,' [and] whether there are 'outstanding issues that must be resolved before a determination of disability can be made,'" including "whether further administrative proceedings would be useful." *Treichler v. Comm'n of Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014) (citing *Garrison*, 759 F.3d at 1020, *Moisa v. Barnhart*, 367 F.3d 882, 887 (9th Cir. 2004), and *Varney v. Sec. of Health and Human Servs.*, 859 F.2d 1396, 1399 (9th Cir. 1988)). "In evaluating this issue, [the Court] consider[s] whether the record as a whole is free from conflicts, ambiguities, or gaps, whether all factual issues have been resolved, and whether the claimant's entitlement to benefits is clear under the applicable legal rules." *Id.* at 1104–05. "Where . . . an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency." *Id.* at 1105.

As discussed above, the ALJ erred in numerous respects in evaluating Dr. Andrews' opinion, but the most significant error was not considering Dr. Andrews' treatment records, including a significant one cited multiple times in Dr. Andrews' medical source statement of the same date. Although it does contain support for some of Dr. Andrews' limitations, the ALJ may consider it and find his opinion unpersuasive with explanation of supportability and consistency. This is a significant "outstanding issue[]" that must be resolved before a disability determination can be made." *Treichler*, 775 F.3d at 1101.

## VI.    CONCLUSION

The Court **RECOMMENDS** the case be **REMANDED** to the Social Security Administration for further administrative proceedings.

**IT IS ORDERED** that no later than **March 15, 2023**, any party to this action may file written objections with the Court and serve a copy to all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that the reply to the objections shall be filed with the Court and served on all parties no later than **March 22, 2023**.

Dated:  February 28, 2023

_____

Hon. Bernard G. Skomal
United States Magistrate Judge

33